## A. HARTMAN ET AL. v. PENNA. R. CO.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
OF PERRY COUNTY.

Argued May 26, 1891—Decided October 5, 1891.

In trespass against a railroad company charging negligence resulting in the death of the plaintiff's son while operating a shunting appliance on a shifting engine, there being no evidence to justify a finding that the death of the son was the result of negligence on the part of the defendant it was not error to direct a verdict for the defendant.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.
No. 81 July Term 1890, Sup. Ct.; court below, No. 3 August Term 1889, C. P.

On April 11, 1889, Andrew Hartman and Nancy M. Hartman brought trespass against the Pennsylvania Railroad Company. Issue.

At the trial, on April 18, 1890, the case presented was in substance as follows: On the morning of May 29, 1888, it was noticed that one of the upright standards used with the shunting pole of a shifting engine, at the Harrisburg yards of the defendant company, was in bad condition, and the engine was sent to the shops to have the standard repaired. The shunting appliance consisted of two uprights or standards inserted in iron sockets placed in the frame on the rear of the tender, one on each side or corner. Each standard was a little over four

feet high. When in position, the foot of each standard rested in the socket upon a shoulder, and through the socket there was a pin-hole, for the insertion of a pin as a fastening. There was testimony however that the pin had not been used for a long time, as it tended to weaken the tenon of the standard, which had a downward bearing sufficient to keep it in position. Each standard was braced to the body of the tender by chains. To each one there was a shunting pole, which when not in use was swung back alongside the tender. When in use, however, the pole was carried around in front of the tender as it was backing, and, suspended by chains from the standard, extended from the frame of the tender to the bottom-frame of the car on the adjoining track, and was so managed by a lever handled by a brakeman, standing on a foot-board in front of the tender, that its far end was inserted and held in a socket on the frame of the car to be pushed into position. The bottom frame of the car being moved was a little higher than the frame of the tender, at the point against which the pole rested, so that if the pole was not carefully managed when in place against the car to be moved, it might run under the car and cause an accident.

The car was returned from the shop with the standard repaired. About seven o'clock in the evening of the day mentioned, the plaintiffs' son, James Hartman, a brakeman in the employment of the defendant company, went on duty with the shifting engine, to move freight cars. When last seen before the accident, he was standing on the foot-board, in his proper position, leaning over with the lever in his hands, shunting a car. When the car had received enough momentum, the engineer put on the brakes and reversed his engine. Immediately afterward, there was a jarring or bumping of the tender, when the fireman ran forward and found Hartman under the fore truck of the tender, and the shunting rigging partly under the car and partly on the ground outside. The standard, it was claimed by the plaintiffs, had either jumped out of the socket, or had broken off. It was alleged that there was negligence in the defendant company in three matters : 1. That the key intended to be put through the socket and the foot of the standard had been carelessly left out. 2. That tin bushing or filling had been placed around the standard before it was

put into place, causing a friction which made the standard work out. 3. That the standard was an old one, or of improper wood.

The case being closed on the evidence, the court, BARNETT, P. J., on request of the defendant, instructed the jury that there was not sufficient evidence to warrant the submission of the question of the defendant's negligence, and directed the jury to return a verdict for the defendant. A verdict for the defendant having been returned and judgment entered, the plaintiffs took this appeal, assigning the instruction to find for the defendant for error.

*Mr. W. H. Sponsler* (with him *Mr. J. L. Markel*), for the appellants.

*Mr. B. F. Junkin* (with him *Mr. J. E. Junkin*), for the appellee.

PER CURIAM:

The only question here is whether there was sufficient evidence of negligence on the part of the defendant company to submit to the jury. The court below said there was not, in answer to the defendant's point, and directed a verdict in its favor. The contention of the plaintiffs was that the standard in question was defective, and that it had jumped out of the socket and lost its purchase. But this contention was a mere theory; it was contradicted by the plaintiffs' own witnesses, and was, moreover, in direct conflict with well-known laws of mechanics. Even if the standard was loose in the socket, yet, as there was a downward bearing upon it, we do not see how it could possibly jump or bounce out. The evidence on both sides plainly shows that the standard broke off in the socket, and, with this fact practically undisputed by the evidence, the plaintiffs had no case. It is not difficult to see how the accident occurred. It is not necessary, however, for us to discuss that subject. It is sufficient to say that there is no evidence in the case which would justify a jury in finding that it was the result of negligence on the part of the defendant.

Affirmed.